# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS WILLIAM HYSELL, | CASE NO.   1:10-cv-01233-AWI-GBC (PC) |
| Plaintiff, | COMPLAINT DISMISSED WITH LEAVE TO AMEND |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | (ECF No. 1) |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

**SCREENING ORDER**

**I.    PROCEDURAL HISTORY**

Plaintiff Douglas William Hysell ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on July 8, 2010.  (ECF No. 1.)  No other parties have appeared.

Plaintiff's Complaint is now before the Court for screening.  For the reasons stated below, the Court finds that Plaintiff has not stated a claim upon which relief may be granted.

///

## II.   SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

## III.   SUMMARY OF COMPLAINT

Plaintiff makes numerous allegations of constitutional violations including, but not limited to: being subjected to cruel and unusual punishment and receiving inadequate healthcare, both in violation of the Eighth Amendment; denial of access to the courts;

denial of right to practice chosen religion; due process violations; property violations; equal protection violations; etc.  Plaintiff also makes claims under 18 U.S.C. § 1961 et seq. and 18 U.S.C. § 4.    Plaintiff lists the following individuals as Defendants: Arnold Schwarzenegger, Jerry Brown, Jr., Fred Aguiar, John Chiamg, Michael A. Ramos, Julie Nauman, Debra Bowen, Mathew Cate, Scott Kernan, Nola Grannis, M. Hodges Wilkins, J. A. Herrera, James Yates, Christine Hudson Huckabay, P. D. Brazelton, E. H. Beels, Dana Allen, Darrin V. Huckabay, Nathaniel Greens, James Wooded, G. Phelan, James Buttle, Paul Soares, Jose Andrade, Alfonso Santos, Michael Steele, Roberto Rodriguez, Mary Gellerson, November L. Erickson, Wendy K. Myers, Jerry Herman, Katheryn Mitchell, William H. Stephens, Marin County Risk Manager, Does 1 through 100, the State of California, County of Marin, California Department of Corrections and Rehabilitation, and Pleasant Valley State Prison.

The Court is unable to determine where or when many of the complained of events occurred as Plaintiff's Complaint is more of a list of complaints than a description of certain events or incidents attributed to specific Defendants.  It appears that the incidents discussed herein primarily occurred at either Mule Creek State Prison or Pleasant Valley State Prison.

Plaintiff seeks compensatory damages and injunctive relief.

**IV.    ANALYSIS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for

3

redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

**A.    Due Process**

At several junctures in the Complaint, Plaintiff appears to be alleging that his right to due process was violated.  Plaintiff refers to sham hearings where he was not allowed due process, the taking of property without due process, and his placement in administrative segregation ("ad-seg"), among other claims.

1.    Hearings

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff, 418 U.S. at 556.  With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours

4

between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987) (per curiam).

"[T]he requirements of due process are satisfied if 'some evidence' supports the decision of the hearing officer or the prison disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir.

1999) (where there is no evidence of guilt it may be unnecessary to demonstrate existence of liberty interest.).  This standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ."  Hill, 472 U.S. at 455-56.

Plaintiff alleges that he was not allowed to call witnesses or present defenses, that the officials conducting the hearings were biased, and that the hearings were shams. However, Plaintiff fails to state any due process claim.  Plaintiff does not state any facts surrounding the hearings other than that they were held and that he was found guilty.  He does not state what he was charged with, if he received notice, when any of the incidents occurred, etc.  Further, Plaintiff does not attribute most of the due process violations to any named Defendants.

In one instance, Plaintiff states that Defendant Steele presided over one of the hearings and further alleges that Steele had a conflict of interest because he was Defendant Erickson's ex-husband.  Plaintiff fails to explain this statement at all.  Further, he does not describe the hearing or events leading up to the hearing.

Plaintiff's conclusory allegations, without more, are insufficient to support a claim of denial of procedural due process.  The Court will grant Plaintiff leave to amend this claim.

2.      Property

Plaintiff alleges several instances of deprivation, confiscation, and damage to his property as a violation of his due process rights.  The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff, 418 U.S. at 556, and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of

property is actionable under the Due Process Clause, Hudson v. Palmer, 468 U.S. 517, 532 n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

California Law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't Code §§ 895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006). Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 123 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 90 P.3d at 123; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff claims that his property was confiscated, damaged, and/or destroyed. He states nothing about what was taken or for how long, or what damage was caused. He also fails to attribute these actions to specific Defendants. Moreover, Plaintiff has failed to offer proof of compliance with the California Tort Claims Act. Plaintiff states several times that he has made claims with the Board. However, it is not clear what this Board is

7

or if it's related to Plaintiff's property claims.  Thus, Plaintiff has failed to allege facts

sufficient to find a violation of his due process rights in relation to property.  The Court will

grant Plaintiff leave to amend his complaint on this claim.

### 3.   Administrative Segregation

Plaintiff appears to allege that he was wrongfully placed in administrative

segregation and that he was wrongly classified.

### a.   Substantive Due Process

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily

required to prove that a challenged government action was clearly arbitrary and

unreasonable, having no substantial relation to the public health, safety, morals, or general

welfare. Where a particular amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing a plaintiff's

claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations,

and brackets omitted), overruled in part on other grounds as recognized by Nitco Holding

Corp. v. Boujikian, 491 F.3d 1086 (9th Cir. 2007); County of Sacramento v. Lewis, 523 U.S.

833, 842 (1998).  In resolving a Fourteenth Amendment substantive due process claim,

the Court must balance "'several factors focusing on the reasonableness of the officers'

actions given the circumstances.'" White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990)

(quoting Smith v. City of Fontana, 818 F.2d 1411, 1417 (9th Cir. 1987), overruled on other

grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999).

Plaintiff has not alleged any facts to support that the prison officials' actions were

arbitrary and unreasonable.  Thus, he has failed to demonstrate a violation of his rights

8

under the substantive component of the Due Process Clause.

b.    Procedural Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for a due process deprivation, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

The Due Process Clause alone creates no liberty interest in remaining in the general prison population.  Hewitt v. Helms, 459 U.S. 460, 468 (1983) (overruled on other grounds).  Prisoners may be housed in administrative segregation to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification. Id.  The allegation that a plaintiff was placed in administrative segregation does not in and of itself state a claim for relief based on deprivation of due process. May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  The Ninth Circuit has explicitly found that "administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence." Toussaint v. McCarthy, 801 F.2d 1080, 1091-92

9

(9th Cir. 1986), abrogated on other grounds by Sandin, 515 U.S. 472.

Further, whether Plaintiff was wrongly placed on C status does not, in and of itself, implicate a constitutional right because, in general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Nor does the Constitution guarantee a prisoner placement in a particular prison or protect an inmate against being transferred from one institution to another. Meachum v. Fano, 427 U.S. 215, 223-225 (1976); see Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating the prisoner's due process rights).

Plaintiff alleges false allegations leading to false charges and sham hearings and changes in status or classification based on these falsities. He fails, however, to establish the existence of a liberty interest that was violated during his time in administrative segregation. The mere placement in administrative segregation does not state a cognizable claim for violation of Plaintiff's rights to procedural due process nor does the a change in classification. The Court will give Plaintiff leave to amend his complaint on this claim.

**B.    Religion Related Claims**

Plaintiff appears to be arguing that he is not being allowed to practice his chosen religion Wiccan/Pagan.

"Inmates . . . retain protections afforded by the First Amendment, including its

10

directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted).  The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85.

RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

See Pub.L.No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc-1).  Plaintiff bears the initial burden of demonstrating that Defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  A "substantial burden" is one that is "oppressive to a significantly great extent." Id. at 995 (internal quotations omitted).  It "must impose a significantly great restriction or onus upon [religious] exercise." Id. (quotations omitted).   A substantial burden includes situations "'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief." Id.

11

If a plaintiff meets this burden, the defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

Here, Plaintiff has not alleged facts demonstrating that Defendants have substantially burdened the exercise of his religion. Other than making several statements that he is not being allowed to practice his chosen religion, he does not demonstrate how or why or who is stopping him from practicing. Thus, this claim fails. Plaintiff will be given leave to amend.

### C.   Equal Protection Claim

Plaintiff alleges that his  Equal Protection rights under the Fourteenth Amendment are being violated.   Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920).  However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." Tigner v. Texas, 310 U.S. 141, 147 (1940).

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. See, e.g., City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985).  The heightened standard of strict scrutiny requires the State to show that the classification is narrowly tailored to serve a

compelling government interest.  Grutter v. Bollinger, 539 U.S. 306, 326 (2003).

Where the inmate is not a member of a protected class, an equal protection claim is subject to the rational basis test.  See McGinnis v. Royster, 410 U.S. 263, 270 (1973) (applying rational basis test where state law denied certain state prisoners good-time credit toward parole eligibility for the period of their presentence county jail incarceration, whereas those released on bail prior to sentence received good-time credit for the entire period of their prison confinement).  Under a rational basis inquiry, in order to prevail on an equal protection claim, Plaintiff must demonstrate that (1) he is similarly situated to others, (2) he is being treated worse than others to whom he is similarly situated, and (3) there is no rational basis for the disparate treatment.  More v. Farrier, 984 F.2d 269, 271 (8th Cir. 1993).  Stated another way, prison officials need show only a rational basis for dissimilar treatment of other similarly-situated persons in order to defeat the merits of Plaintiff's claim.  Id., 984 F.2d at 271.

Plaintiff does not state that he is a member of a protected class or that other's are being treated differently than him.  Thus, Plaintiff fails to state an equal protection claim. The Court will give Plaintiff leave to amend.

D.   **Conspiracy**

Plaintiff repeatedly states that Defendants conspired against him.  A conspiracy claim brought under Section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma,

866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).

The federal system is one of notice pleading, and the Court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy.  <u>Empress LLC v. City and County of San Francisco</u>, 419 F.3d 1052, 1056 (9th Cir. 2005); <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  <u>Twombly</u>, 127 S.Ct. at 1965 (citations omitted).  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  <u>Id.</u> at 1964-65 (internal quotations and citations omitted).  As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Plaintiff offers only the repeated description of conspiratorial conduct.  He alleges no facts showing a meeting of the minds or the sharing of a common objective between any of the Defendants.  Further, he has yet to sufficiently allege a constitutional violation.  Thus, this claim fails.  The Court will give Plaintiff leave to amend.

### E.    Denial of Access to Courts

Plaintiff alleges that he was denied access to the courts by Defendants.

Inmates have a fundamental constitutional right of access to the courts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 346 (1996).  However, the right is limited to direct criminal appeals,

habeas petitions, and civil rights actions.  Id. at 354.  Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15 (2002).  Forward-looking claims allege "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time."  Christopher, 536 U.S. at 413.  In these cases that have yet to be litigated, "the justification for recognizing that [forward-looking] claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  Id.  As part of the requirement to plead an injury, a plaintiff must allege that "a nonfrivolous legal claim had been frustrated or was being impeded."  Lewis, 518 U.S. at 353; see also Christopher, 536 U.S. at 415. Simply stating that a claim is "nonfrivolous" due to the action of a government official will not satisfy the actual injury requirement.  Christopher, 536 U.S. at 415.  Rather, the nonfrivolous "underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  Id. at 416.  The plaintiff must describe this "predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."  Id.  The complaint should "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Id. at 417-418; see Lewis, 518 U.S. at 353 n. 3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value-arguable claims are settled, bought and sold.  Depriving someone of

a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions.").

When a prisoner asserts that he was denied access to the courts and seeks a remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing Christopher, 536 U.S. at 413-414, overruled on other grounds, Hust v. Phillips, 129 S.Ct. 1036 (2009)).

In support of this argument, Plaintiff states that he has been denied access to legal property, the law library, and legal materials and that his 602 grievances have been mishandled. Having reviewed the allegations in the Complaint, the Court finds that Plaintiff has failed to state a claim for denial of access to the courts. Plaintiff fails to describe in detail any action that he has been unable to pursue and also failed to show how such action would not be frivolous. Thus, the Court dismisses this claim and will grant Plaintiff leave to amend this claim. Again, unless Plaintiff can allege additional facts showing that any denial of access to the courts frustrated his ability to pursue a non-frivolous claim, he would be well-served devoting his time to his other claims.

## F.   Inmate Appeals Process

Plaintiff appears to be alleging that Defendants failed to respond properly to his inmate appeals. Defendants' actions in responding to Plaintiff's appeals alone cannot give rise to any claims for relief under Section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v.

DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a Section 1983 action. Buckley, 997 F.2d at 495.

Thus, since he has neither a liberty interest, nor a substantive right to the procedures involved in inmate appeals, Plaintiff fails to state a claim in this regard. Because amendment of this claim would be futile, the Court advises Plaintiff that he would be well-served devoting his energy to pursuing his other claims.

### G.   Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

A Plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and Plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd.

Of Educ. v. Doyle, 429 U.S. 274 (1977).  The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent.  See id. at 808; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

Retaliation is a common thread throughout Plaintiff's Complaint.  He repeatedly claims that Defendants are retaliating against him for pursuing his First Amendment right to file a grievance or pursue an action.  However, making these conclusory allegations over and over again is not sufficient to state a retaliation claim.  If Plaintiff would like make such a claim, he must link the adverse action to constitutionally protected conduct.  Plaintiff must specify which Defendants were retaliating, how they retaliated, and why they retaliated.  Plaintiff will be given leave to amend.

### H.    Racketeer Influenced and Corrupt Organizations Act

Plaintiff repeatedly states that Defendants are violating 18 U.S.C. § 1961-1968.

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968 allows a private citizen to sue to recover treble damages for injury "by reason of a violation of section 1962", which prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity or through the collection of an unlawful debt.  18 U.S.C. § 1962.  A violation of section 1962(c) requires 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).  Furthermore, the plaintiff must actually be injured by the conduct which purportedly violates 18 U.S.C. § 1962.  Sedima at 496.

The RICO statute enumerates specific acts which constitute predicate acts to satisfy the racketeering activity element.  18 U.S .C. § 1961(1).  In the present case, Plaintiff's RICO allegation is confusing at best.  It appears that Plaintiff alleges that Defendants obstructed his access to the courts by not answering his 602 appeals and by denying him meaningful access to the courts in order to change the judicial determinations of the court, so that Defendants could effectively stop his litigation in federal court, and to retaliate against Plaintiff for pursuing his First Amendment rights.  Plaintiff asserts that this demonstrates a pattern of racketeering activity.  However, Plaintiff then alleges that Defendants and the State Legislature enacted unconstitutional laws, rules or regulations in order to collect an unlawful debt from each and every person in the state.

In pleading a RICO violation, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face . . . and [the facts] must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 556.  In the present case, although Plaintiff states that defendants or CDCR violated 18 U.S.C. § 1962(c), it is not even clear what the basis is for his allegation.

First, Plaintiff's allegations that Defendants denied him meaningful access to the law library, and failed to answer his prison grievances, which Plaintiff alleges resulted in judicial determinations favorable to Defendants are not enumerated predicate acts within the meaning of 18 U.S.C. § 1961 and may not serve as a basis for liability.  Thus, Plaintiff fails to allege a necessary element of a RICO violation.

An alternative to proving a pattern of racketeering activity is to prove that the enterprise acquired or operated by means of an unlawful debt.  18 U.S.C § 1961(6) defines an unlawful debt as "a debt (A) incurred or contracted in gambling activity which was in

violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." In the present case, Plaintiff fails to sufficiently allege that Defendants operated by means of an unlawful debt as so defined in 18 U.S.C. § 1961(6).

Plaintiff fails to state a claim for relief that is plausible on its face or that raises a right to relief above a speculative level.

**I.    18 U.S.C. § 4**

Plaintiff states that he is pursuing a claim under 18 U.S.C. § 4 which defines the crime of misprision of felony.  However, Plaintiff does not state anything else regarding this section.  Plaintiff appears to argue that he is bringing this action to report the alleged criminal behavior of prison officials.  However, a violation of this criminal statute does not provide for a private right of action by Plaintiff simply because he claims he has been affected by its alleged violation.  There is no private cause of action for the alleged violation of 18 U.S.C. § 4 unless the intent to create a private cause of action is expressed in the statute or clearly implied.  See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190 (1994); Cort v. Ash, 422 U.S. 66, 79 (1975).  Here, neither the statute itself nor any legal authority provides for a private cause of action under 18 U.S.C. § 4.  See, e.g., Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994) (concluding that district court properly dismissed claim pursuant to § 242

because it is a "criminal statute[ ] that do[es] not provide [a] private cause[ ] of action");

Cominsky v. FBI, 2007 WL 2206606 (N.D.Ohio May 29, 2007) (noting that §§ 4 and 242

are criminal statutes and "provide no private right of action"); Mathews v. Washington Mut.

Bank, FA, 2006 WL 2380460 (E.D.Pa. Aug. 14, 2006) (stating that "[n]o right of civil action

is created by the plain language of [§ 4]"; adding that "[w]e can find no court that has

concluded that this statute creates any personal right or private remedy").  Thus, Plaintiff's

claim fails.

**J.    Personal Participation and Supervisory Liability**

Plaintiff appears to argue that many of the named Defendants are liable for the

conduct of  subordinates as most of the named Defendants were not present and did not

participate in the allegedly unconstitutional conduct.  In fact, many of the named Defendants

are not mentioned at all in the factual allegations section of Plaintiff's Complaint and no

action has been attributed to them.

Under Section 1983, Plaintiff must demonstrate that each named Defendant

personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934

(9th Cir. 2002).  The Supreme Court has emphasized that the term "supervisory liability,"

loosely and commonly used by both courts and litigants alike, is a misnomer.  Iqbal, 129

S.Ct. at 1949.  "Government officials may not be held liable for the unconstitutional conduct

of their subordinates under a theory of respondeat superior."  Id. at 1948.  Rather, each

government official, regardless of his or her title, is only liable for his or her own misconduct,

and therefore, Plaintiff must demonstrate that each Defendant, through his or her own

individual actions, violated Plaintiff's constitutional rights.  Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are

not subject to vicarious liability, but are liable only for their own conduct. <u>Jeffers v. Gomez</u>, 267 F.3d 895, 915 (9th Cir. 2001); <u>Wesley v. Davis</u>, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004).   In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. <u>Jeffers</u>, 267 F.3d at 915; <u>Wesley</u>, 333 F.Supp.2d at 892.   The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. <u>Wesley</u>, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement. <u>Id.</u> (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability. <u>Munoz v. Kolender</u>, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002).   Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury. <u>Id.</u>   "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" <u>Id.</u> (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-744 (9th Cir. 1978)).

It is impossible to determine which Defendants named in the Complaint are named solely in their supervisory capacity.   As far as the Court can determine, it appears that at least half of the named Defendants did not actually participate in the allegedly wrongful acts but were merely supervisors of the Defendants that committed the acts.   In his amended complaint, Plaintiff must attribute personal action to each and every named Defendant and should omit any Defendant named solely because he was another person's supervisor.   If

Plaintiff cannot allege any particular action taken by a Defendant, he should not include that person in the amended complaint.  If Plaintiff fails to heed this warning, he risks having his entire case dismissed for violating Rules 8(a) and 18(a).

### K.    Rule 18

"The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff's Complaint is voluminous and includes multiple unrelated claims against differing Defendants.  While it appears that Plaintiff may be able to state at least one cognizable claim, he clearly violates Rule 18(a) by including multiple unrelated claims in this single filing.  Plaintiff will be given the opportunity to file an amended complaint under this case number, wherein he is directed to plead/allege only related claims occurring at one institution.  All unrelated claims should be brought in separate suits.  Plaintiff is advised that if he chooses to file an amended complaint, and fails to comply with Rule 18(a), the Court

will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

### L. **Rule 20**

Plaintiff must keep in mind the following legal standard when amending his complaint.  Under Rule 20 of the Federal Rules of Civil Procedure, a plaintiff may join any persons as defendants if:  (1) any right to relief asserted against the defendants relates to or arises out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there is at least one question of law or fact common to all the defendants. Fed.R.Civ.P. 20(a); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Ins. Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980).  Once a defendant is properly joined under Rule 20, the plaintiff may join, as independent or alternative claims, as many claims as the plaintiff has against that defendant, irrespective of whether those additional claims also satisfy Rule 20.  See Fed.R.Civ.P. 18(a); Intercon Research Assoc., Ltd. v. Dresser Indus. Inc., 696 F.2d 53, 57 (7th Cir. 1982) ("[J]oinder of claims under Rule 18 becomes relevant only after the requirements of Rule 20 relating to joinder of parties has been met with respect to the party against whom the claim is sought to be asserted; the threshold question, then, is whether joinder of [a defendant] as a party was proper under Rule 20(a)."); accord, 7 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure Civil 3d § 1655 (2008) (hereinafter "Fed. Prac. & Proc. Civ.3d" ).

The "same transaction" requirement in Rule 20 refers to "similarity in the factual background of a claim; claims that arise out of a systematic pattern of events" and have a "very definite logical relationship" arise out of the same transaction and occurrence. Bautista v. Los Angeles County, 216 F.3d 837, 842-843 (9th Cir. 2000) (Reinhardt, J.,

24

concurring) (quoting <u>Coughlin</u>, 130 F.3d at 1350 and <u>Union Paving Co. v. Downer Corp.</u>, 276 F.2d 468, 470 (9th Cir. 1960)); <u>see</u> <u>Harris v. Spellman</u>, 150 F.R.D. 130, 132 (N.D.Ill. 1993) (holding that the claims of two prisoners challenging the constitutional adequacy of disciplinary hearings did not arise from the same transaction or occurrence or the same series of transactions or occurrences where "the hearings were conducted by different people at different times to consider different charges" and "rais[ed] different issues of law"), cited with approval in <u>Coughlin</u>, 130 F.3d at 1350. In addition, "the mere fact that all [of a plaintiff's] claims arise under the same general law does not necessarily establish a common question of law or fact." <u>Coughlin</u>, 130 F.3d at 1351. Claims "involv[ing] different legal issues, standards, and procedures" do not involve common factual or legal questions. <u>Coughlin</u>, 130 F.3d at 1351. Rule 20, however, is interpreted broadly to promote judicial economy and convenience, especially at the pleading stage. <u>See</u> <u>Pena v. McArthur</u>, 889 F.Supp. 403, 406 (E.D.Cal. 1994); 7 Fed. Prac. & Proc. Civ.3d § 1653 ("[C]ourts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court.").

As currently pleaded, Plaintiff's Complaint is 40 single spaced pages of facts with approximately 40 named Defendants and 100 Doe Defendants. Plaintiff's statement of the case includes multiple legal issues, different Defendants, different institutions, different dates, etc. Plaintiff appears to be claiming that many of the instances were either committed as part of a conspiracy or in retaliation. These are merely conclusory statements. Nothing ties Plaintiff's allegations and claims together. In his amended complaint, Plaintiff must pare down his allegations. Plaintiff should amend only those

claims that are part of the same transaction or occurrence and that involve the same  or similar Defendants and similar or related legal questions.   Another diary of Plaintiff's complaints will not be tolerated by the Court.

### M.   Habeas Relief Request

Plaintiff repeatedly states that he is being held in prison illegal.  The Court would like Plaintiff to keep in mind that when a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus.  Preiser v. Rodriguez, 411 U.S. 475, 498-500 (1973); Young v. Kenny, 907 F.2d 874, 875-76 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991).  If Plaintiff is indeed complaining about the legality or duration of his custody, Plaintiff's civil rights complaint will be dismissed entirely.

## V.   CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted.  The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is

not for the purposes of adding new defendants or claims.   Plaintiff should focus the amended complaint on claims and defendants discussed herein keeping in mind Rules 18 and 20 cited above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.    Plaintiff's Complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2.    Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:10-cv-1233-AWI-GBC (PC); and

3.    If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:    July 6, 2011    

_____
UNITED STATES MAGISTRATE JUDGE

27